**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No.  08-cv-01513-CMA-BNB

MOUNTAIN STATES MEDIA, LLC, a Colorado limited liability company, and
WAYNE OSTERLOO, an individual,

     Plaintiffs,

v.

ADAMS COUNTY, COLORADO, a Colorado governmental entity, and
ROBERT D. CONEY, an individual,

     Defendants.

---

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

---

This matter is before the Court on Defendants' Motion for Summary Judgment
and Motion to Dismiss (Doc. # 8) and Plaintiffs' Motion for Summary Judgment (Doc.
# 29).

## INTRODUCTION

Mountain States Media, LLC and Wayne Osterloo (collectively, "Plaintiffs") are in
the outdoor advertising business.  They have been locked in a struggle with defendant
Adams County, Colorado ("Adams County" or the "County") and its director of planning
and development, defendant Robert Coney (collectively, "Defendants") over the
construction of outdoor signs, which the County regulates.  After having their application
to erect a standard commercial billboard denied, Plaintiffs sought to take advantage of
an exception to the County's regulations that allows signs promoting "civic events" to

be posted without a permit.  Defendants refused to allow Plaintiffs to construct their billboard-sized signs, however, finding the "civic events" exception to be limited to smaller fixtures and available only to governmental entities.  That decision prompted the present litigation.  Plaintiffs contend that Defendants have drawn an unconstitutional distinction that favors government over private speakers on matters of civic events. Defendants moved for summary judgment, arguing that they are merely enforcing the County's billboard regulations in a constitutionally permissible manner.  Plaintiffs responded with a motion for summary judgment of their own, focused solely on their request that the Court declare Defendants' interpretation of the civic events exception to be in error.

## BACKGROUND

Adams County's Board of County Commissioners has adopted Development Standards and Regulations ("Standards and Regulations") to "protect and promote the public health, safety, and general welfare of the County."  Standards and Regulations § 1-01-01.[1]  Those Standards and Regulations govern, among other things, signs and billboards.  Section 4-15 of the Standards and Regulations is devoted to "Off-Premise Sign[s] (Bilboard[s])."  That section provides that billboards are permitted "with an approved Conditional Use Permit" in certain commercial and industrial districts.

---

[1]   Both sides attach excerpts of the Standards and Regulations to their briefs.  (Doc. # 8, Ex. A; Doc. # 29, Ex. 1.)  Rather than citing to these exhibits, the Court will simply reference the "Standards and Regulations" and the appropriate section.  Neither party includes the full Standards and Regulations.  However, the Court may take judicial notice of other sections of the Standards and Regulations, as appropriate.  *See Zimomora v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495, 1503-04 (10th Cir. 1997) (court may take judicial notice of municipal ordinances).

*Id.* § 4-15.  A conditional use permit "may be approved by the Board of County Commissioners" after the appropriate review takes place.  *Id.* §§ 2-02-08-04, -05. In evaluating a conditional use permit, the County considers whether the use is permitted in the applicable zoning district, whether the use is consistent with the purposes and requirements of the Standards and Regulations, and whether the use is appropriate in and compatible with the surrounding area.  *Id.* § 2-02-08-06.

In a separate section, the Standards and Regulations provide rules applicable to "Signs and Outdoor Commercial Advertising Devices."  *Id.* § 4-14.  That section specifically exempts certain signs from the regulatory scheme.  As relevant to this case, those exemptions provide:

> The provisions of the Section . . . do not apply to the following, which are therefore excepted from these provisions.
>
> * * * *
>
> 8.    *Civic Events Posters and Announcements:* Posters, flyers and announcements promoting civic events may be displayed, but shall not contain advertisements for products or services not associated with the civic event.

and

> The following signs are exempted from permits and fees:
>
> 1.    *Official Notices:* Official government notices and notices posted by government officers or employees in the performance of their official duties and government signs to control traffic, identifying [sic] roads, warn of danger or perform other regulatory purposes.

*Id.* §§ 4-14-03-01, -02.

Plaintiffs entered into several leases for property in Adams County, the terms of which allowed Plaintiffs to erect signage.  (Doc. # 14, Exs. 12-13.)  As required by the Standards and Regulations, Plaintiffs applied for a conditional use permit to construct a commercial billboard on the property.  (*See* Doc. # 8, Ex. B.)  In June 2006, the Adams County Board of County Commissioners denied Plaintiffs' application.  (*Id.*)  Plaintiffs protested that Adams County was applying its regulations inconsistently, pointing to a County-owned sign near the Adams County Regional Park that was permitted under what Plaintiffs contended was a different (and more favorable) review standard.  (Doc. # 14, Ex. 17, attach. 3.)  In response, Defendants claimed that the Adams County sign was exempt from regulation under both the "Official Notices" and the "Civic Events Posters and Announcements" ("CEPA") exceptions to the Standards and Regulations, noted above.  (Doc. # 14, Ex. 2.)

Plaintiffs then decided to "concentrate on building [civic events] signs in the County instead of billboards."  (Doc. # 14, Ex. 3.)  In Plaintiffs' words,

> [t]he regulatory environment for these signs . . . is the type of environment we can not pass up.  Since [the County] has decided that these signs are exempt from any sign regulations or permits, and since [the Standards and Regulations] state[ ] these signs are exempt from building permits and fees, we decided that we would enter this exciting and new area of advertising as no County permits or fees are required.

(Doc. # 14, Ex. 5.)  Plaintiffs guaranteed that the signs would contain only messages promoting civic events and that "no companies or products that don't promote that event will be displayed."  (Doc. # 14, Ex. 3.)  But though the content of the signs would be different from Plaintiffs' proposed commercial billboards, the structure would be similar;

according to Plaintiffs' Colorado Department of Transportation permit applications, the civic event signs would be 35 feet above the ground with a sign face height of 14 feet and a sign face width of 48 feet.  (Doc. # 14, Ex. 17, attach. 9.)

Defendants, viewing Plaintiffs' actions as an attempt to evade the normal permitting process, refused to recognize what they considered to be billboards as exempt CEPA signs.  (*See, e.g.*, Doc. # 14, Ex. 6.)  This prompted a furious exchange of letters between the parties, with Plaintiffs claiming they were "erecting . . . 'Civic Events Posters and Announcements' signs (NOT BILLBOARDS)" (Doc. # 14, Ex. 7), and Defendants responding that, call it what you will, a billboard is a billboard and not a civic event sign (Doc. # 14, Ex. 10).  Defendants eventually articulated the position that precipitated the present litigation: "Only governmental entities may erect a Civic Events Poster or Announcement sign."  (Doc. # 14, Ex. 9; *see also* Doc. # 8, Ex. C.)  According to Mr. Coney, he read "civic events" to mean "events sponsored by governments, not commercial advertising."  (Doc. # 8, Ex. D.)  Plaintiffs appealed this determination to the Adams County Board of Adjustment, a body appointed by the Board of County Commissioners and charged with the authority and responsibility to "[h]ear and decide appeals brought by any aggrieved person regarding allegations of error by an administrative official in the application or enforcement of the[ ] standards and regulations."  Standards and Regulations §§ 1-02-01-02-05, 1-02-03-12-03. At a hearing on June 19, 2008, the Board upheld the decision.  (Doc. # 8, Ex. E.)

Following this administrative appeal, Plaintiffs filed suit against Adams County and Mr. Coney in his individual capacity.  (Doc. # 1.)  Plaintiffs' essential contention is that Defendants' interpretation of the CEPA exemption impermissibly elevates governmental speech over the speech of private citizens on issues of civic events. Plaintiffs asserted claims for violation of their First Amendment rights, their Fourteenth Amendment equal protection rights, and their Fourteenth Amendment due process rights.  (*Id.* at 6-8.)  Plaintiffs also requested a declaration that Defendants' interpretation of the CEPA exemption was erroneous.  (*Id.* at 8.)  Finally, Plaintiffs sought relief under the Colorado Constitution, but dropped this claim in response to Defendants' motion for summary judgment.  (*Id.* at 9; *see also* Doc. # 14 at 18.)

Defendants moved for summary judgment on all claims, and also contended that Mr. Coney was entitled to qualified immunity.  (Doc. # 8.)  Shortly thereafter, Plaintiffs filed their own motion for summary judgment, focused only on the declaratory judgment claim.  (Doc. # 29.)  At the trial preparation conference, held July 12, 2009, the Court heard argument from the parties on these motions.  (*See* Doc. # 85.)  The Court further invited the parties to file supplemental briefing by the close of the day on July 14 (*see id.*); neither side availed itself of this opportunity.

## STANDARD OF REVIEW

Summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c).  A fact is "material" if it could affect the outcome of the suit, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

The moving party bears the burden to show, beyond a reasonable doubt, that it is entitled to summary judgment.  *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).  Where the moving party will not have the ultimate burden at trial, it may carry this burden "'either by producing affirmative evidence negating an essential element of the non-moving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial.'"  *Id.* (quoting *Trainor v. Apollo Med. Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  Once this initial burden is met, the nonmoving party "'must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof.'"  *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (quoting *Sims v. Okla. ex rel. Dep't of Mental Health & Substance Abuse*, 165 F.3d 1321, 1326 (10th Cir. 1999)).  However, where the moving party does have the burden at trial, it "must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case."  *Pelt*, 539 F.3d at 1280 (citing *Mudrick v. Cross Servs., Inc.*, 200 F. App'x 338, 340 (5th Cir. 2006)).  In either situation, the Court views the record in the light most favorable to the nonmoving party.  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## ANALYSIS

### I.   PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs move for summary judgment on their claim for declaratory relief, which asks this Court to rule that Defendants have erroneously interpreted the CEPA exemption.  (*See* Doc. # 1 at 8-9.)  Plaintiffs advance two specific arguments in support of their motion: (1) the plain language of the exemption does not limit CEPA signs to government entities; and (2) any interpretation that includes such a limitation is unconstitutional and should be avoided if at all possible.  (*See* Doc. # 29.)

Before assessing these arguments, the Court considers Defendants' claim that this is not the appropriate forum for such a declaratory judgment challenge. Defendants argue that Plaintiffs' are challenging an administrative zoning determination, which is limited to review in state court under C.R.C.P. 106(a)(4).  (Doc. # 31 at 7-8.) Rule 106 provides that "[w]here any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law," the aggrieved party can challenge the decision by filing a complaint in state district court within thirty days of the decision.  C.R.C.P. 106(a)(4), (b).  It is true, as Defendants note, that zoning challenges often must be brought as Rule 106 claims. *See, e.g.*, *Sundheim v. Bd. of County Comm'rs*, 904 P.2d 1337, 1345 (Colo. App. 1995) ("An action for judicial review under C.R.C.P. 106(a)(4) is the exclusive remedy for contesting a zoning decision when the entire zoning ordinance is not challenged and

when record review of the county procedure provides an adequate remedy."). But the fact that the challenged decision relates to zoning does not, by itself, invoke the rule. The key is the character of the decision at issue. If the decision is legislative, rather than judicial, a challenge is not limited to a Rule 106 review. *Margolis v. Dist. Ct.*, 638 P.2d 297, 303 (Colo. 1981) (noting that acts that "had the earmarks of quasi-judicial proceedings . . . were properly reviewed under C.R.C.P. 106(a)(4)," but that "ordinances establishing general policies  . . . [are] legislative in nature" and reviewable under Colorado's declaratory judgment rule). The Colorado Supreme Court has explained the distinction:

> Legislative action is usually reflective of some public policy relating to matters of a permanent or general character, is not normally restricted to identifiable persons or groups, and is usually prospective in nature. . . . Quasi-judicial action, on the other hand, generally involves a determination of the rights, duties, or obligations of specific individuals on the basis of the application of presently existing legal standards or policy considerations to past or present facts developed at a hearing conducted for the purpose of resolving the particular interests in question.

*Cherry Hills Resort Dev. Co. v. City of Cherry Hills Vill.,* 757 P.2d 622, 625 (Colo. 1988) (citations omitted). While there is no "litmus-like test for identifying quasi-judicial action," "[t]he central focus . . . should be on the nature of the governmental decision and the process by which that decision is reached." *Id.* at 627.

In this case, Plaintiffs do more than challenge a decision with respect to their specific property. Their challenge, now and throughout, has been to the general determination that no private party may take advantage of the CEPA exemption. This determination applies to any citizen, anytime, anywhere in Adams County, and thus is

legislative in character.  *See Landmark Land Co., Inc. v. City & County of Denver*, 728

P.2d 1281, 1284-85 (Colo. 1986) (amendment to ordinance that provided maximum

height for buildings near park and covered "several hundred lots" was quasi-legislative

action; "[T]his amendment fits squarely into our description of legislative action: it is

prospective in nature, of general application, and requires the balancing of questions

of judgment and discretion.  It does not pertain only to the immediate parties, as

quasi-judicial acts typically do, but rather involves judgment based on possible future

facts and is binding on all land that it affects . . . .") (citations omitted).  As such,

Plaintiffs' declaratory judgment challenge is not confined to a Rule 106 review.

Plaintiffs first attack Defendants' interpretation as contrary to the plain language

of the CEPA exemption, which, Plaintiffs claim, "does not distinguish between

governmental and private speakers."  (Doc. # 29 at 4.)  Interpretation of a municipal

ordinance is a question of law.  *Town of Erie v. Eason*, 18 P.3d 1271, 1274 (Colo.

2001).  Courts are required to give effect to the intent of the enacting body, which they

do, first, by looking to the plain language of the ordinance.  *City of Colo. Springs v.

Securcare Self Storage, Inc.*, 10 P.3d 1244, 1248-49 (Colo. 2000).  However, [w]hile

statutory construction is ultimately a judicial responsibility, [courts] consult and ordinarily

defer to the agency's guidance, rules, and determinations, if they are within the

agency's statutory authority and do not contravene constitutional requirements."  *Colo.

Dept. of Revenue v. Hibbs,* 122 P.3d 999, 1002 (Colo. 2005) (citing *Wash. County

Bd. of Equalization v. Petron Dev. Co.*, 109 P.3d 146, 150 (Colo. 2005)).  Thus, "the

construction of an ordinance by administrative officials charged with its enforcement should be given deference by the courts." *Abbott v. Bd. of County Comm'rs*, 895 P.2d 1165, 1167 (Colo. App. 1995). This deference is particularly appropriate in the present case, as "[f]ederal courts should be reluctant to interfere in zoning disputes which are local concerns." *Norton v. Vill. of Corrales*, 103 F.3d 928, 933 (10th Cir. 1996) (citing *Gunkel v. City of Emporia*, 835 F.2d 1302, 1304 (10th Cir. 1987)).

> As noted above, the CEPA exemption provides:

> *Civic Events Posters and Announcements:* Posters, flyers and announcements promoting civic events may be displayed, but shall not contain advertisements for products or services not associated with the civic event.

Standards and Regulations § 4-14-03-01.8. Mr. Coney, who as the director of planning and development for the County is charged with interpreting this ordinance, *see* Standards and Regulations § 1-01-09-05, has stated that his interpretation of the term "civic events" "by its definition means events sponsored by governments, not commercial advertising." (Doc. # 8, Ex. D, ¶¶ 3-4.) He reiterated this position in his deposition, describing the purpose of the CEPA exemption as providing information to the community about upcoming events that are sponsored by a government entity. (Doc. # 70, Ex. 50, at 119.) Mr. Coney further stated that CEPA signs were never intended to be large displays, and that an exemption for billboards mentioning civic events would be contrary to the intent of the regulations as a whole, which contain specific regulations for billboards in a section separate from the CEPA exemption. (Doc. 8, Ex. D, ¶¶ 5-6.) He also noted that limiting the exemption to governmental

entities is likely to further the purpose of the sign regulations because governments, who are responsible to their constituents, are "unlikely to erect multiple unnecessary signs that clutter the landscape of their community." (Doc. 8, Ex. D, ¶¶ 6-7.)  The Adams County Board of Adjustment, which is charged with reviewing Mr. Coney's application and enforcement of the Standards and Regulations, *see* Standards and Regulations § 1-02-03-12-03, unanimously upheld this interpretation.  (Doc. # 8, Ex. E.)

Given the Court's constrained review of the County's interpretation of its own regulations, the Court cannot say that this interpretation is impermissible.  While the CEPA exemption does not expressly use the phrase "governmental entities," the interpretation of "civic" as meaning "governmental" is not inconsistent with the common meaning of the term.  *See* Merriam-Webster's Collegiate Dictionary 226 (11th ed. 2007) ("civic" means "of or relating to a citizen, a city, citizenship, or community affairs"); *see also People ex rel. City of Arvada v. Nissen*, 650 P.2d 547, 551 (Colo. 1982) (noting that courts "have often made reference to standard dictionaries . . . to determine the probable legislative intent in using a particular word") (internal quotations omitted). Moreover, Defendants' interpretation is not inconsistent with the overall regulations, which contain a separate section addressing billboard-sized signage.  It is certainly possible that an interpretation applying the CEPA exemption to public and private entities alike would also be reasonable, and perhaps even a better interpretation, particularly considering that the regulations separately exempt government signs and official government notices.  *See* Standards and Regulations § 4-14-03-02(1).

But bearing in mind the deference owed to Defendants and the Court's reluctance to become enmeshed in local zoning disputes, the Court declines to declare that Defendants' interpretation contradicts the plain language of the regulation.

Invoking the constitutional avoidance doctrine, Plaintiffs also contend that Defendants' interpretation presents serious constitutional questions and therefore should not be endorsed.  (Doc. # 29 at 3-4.)  The doctrine of constitutional avoidance instructs that "'[i]f a challenged ordinance lends itself to alternate constructions, one of which is constitutional, the constitutional interpretation must be adopted.'"  *Kruse v. Town of Castle Rock*, 192 P.3d 591, 597 (Colo. App. 2008) (quoting *Nissen*, 650 P.2d at 550).  The problem with Plaintiffs' argument, however, is that their proposed construction presents its own constitutional problems.  Plaintiffs' argue that the CEPA exemption should be interpreted to mean that anyone, government or private citizen, can avoid regulation so long as their signs relate to "civic events."  By Plaintiffs' own admission, this is a "content-based limitation."  (Doc. # 29 at 4.)  The Supreme Court has repeatedly emphasized that "[r]estrictions on speech based on its content are presumptively invalid and subject to strict scrutiny."  *Ysursa v. Pocatello Educ. Ass'n*, ___ U.S. ___,  129 S. Ct. 1093, 1098 (2009)  (internal quotations omitted).  As Plaintiffs' own interpretation raises constitutional concerns, the doctrine of constitutional avoidance has no place in the Court's construction of the ordinance.[2]

---

[2]  Plaintiffs advance a second reason why Defendants' interpretation is unconstitutional – by requiring private speakers to obtain a permit to erect a sign about civic events, it constitutes an unconstitutional prior restraint.  (Doc. # 29 at 7-8.)  The Court disagrees.  As noted below, the CEPA exemption is not aimed at the content of speech, and therefore does not constitute a prior restraint.  *See supra* Sec. II.B.

For these reasons, the Court will defer to Defendants' construction of the CEPA ordinance.  The Court now turns to Defendants' motion for summary judgment and the question of whether the ordinance, as interpreted, is constitutional.

## II.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs raise five claims for relief in their complaint: violation of their First Amendment rights; violation of their Fourteenth Amendment due process rights; violation of their Fourteenth Amendment equal protection rights; violation of the Colorado Constitution; and declaratory judgment.  Defendants move for summary judgment on all claims.  The declaratory judgment and Colorado Constitution claims are easily disposed of.  Plaintiffs have conceded that their claim under the Colorado Constitution should be dismissed, (Doc. # 14 at 18), so that claim requires no discussion.  Further, the above analysis of the declaratory judgment claim makes clear that Defendants' interpretation of the CEPA exemption is permissible and therefore Defendants are entitled to judgment as a matter of law.  *See infra* Sec. I.  Turning to Plaintiffs' claims under the federal constitution, the Court first addresses the due process claim.  Because the First Amendment and equal protection claims present similar issues, the Court then addresses those claims together.  Finally, the Court considers the qualified immunity issue.

A.   Substantive Due Process

Plaintiffs argue that the CEPA exemption's limitation to governmental entities "unfairly deprives Plaintiffs of speech and property rights" under the Fourteenth

Amendment.  (Doc. # 1 at 7.)  The parties agree that, in order to state a substantive due

process claim, Plaintiffs must show both that they have a property or liberty interest

warranting protection and that the governmental action depriving them of such interest

was "arbitrary and capricious."  (Doc. # 8 at 9; Doc. # 14 at 13.)  *See also Crider v. Bd.*

*of County Comm'rs*, 246 F.3d 1285, 1289 (10th Cir. 2001).  Defendants argue neither

showing has been made.

Defendants first contend that Plaintiffs have no property interest that could

implicate due process.  (Doc. # 8 at 9-10.)  In order to have a cognizable property

interest, a party must have a "legitimate claim of entitlement" to some benefit; in the

municipal land regulation context the entitlement analysis is a question of law that

"focuses on whether there is discretion in the defendants to deny a zoning . . .

application filed by the plaintiffs."  *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d

1207, 1210 (10th Cir. 2000) (internal quotations omitted).  Defendants argue that

Plaintiffs may not erect billboards on their property without a conditional use permit –

a decision over which the County has full discretion[3] – and thus Plaintiffs can claim no

---

[3]   The Standards and Regulations provide, in relevant part:

All uses that require a conditional use permit must be processed in accord-
ance with this section.  Only the Board of County Commissioners **may**, after
recommendation of the Planning Commission, adopt a resolution approving a
conditional use to locate in accordance with these standards and regulations.
Only those uses that are authorized as conditional uses in a zone district **may**
be approved.  The designation of a use as a conditional use does not constitute
an authorization or an assurance that such a use will be approved.

Standards and Regulations § 2-02-08-02 (emphases added).  They further provide that, when
a conditional use permit has been applied for and the appropriate hearings have been held,

legitimate entitlement.  (Doc. # 8 at 10.)  Plaintiffs respond that the property right in question is not the right to erect billboards, but rather the right to erect CEPA signs. Plaintiffs reiterate their argument that the plain language of the CEPA exemption does not distinguish between government and private speakers and contend that this means they have an entitlement to put up CEPA signs.  (Doc. # 14 at 14.)  However, as noted above, Defendants' interpretation of the CEPA exemption is entitled to deference. Under that interpretation, only governments are "entitled" to construct CEPA signs. As Plaintiffs cannot claim an entitlement to CEPA signs, and as Defendants have complete discretion to permit the construction of billboards on Plaintiffs' property, Plaintiffs have no protected property interest sufficient to give rise to a due process claim.

Plaintiffs further argue that "expression regarding civic events is a constitutionally guaranteed liberty interest that warrants due process protection."  (Doc. # 14 at 13.) The Supreme Court has made clear that "if a constitutional claim is covered by a specific constitutional provision . . . , the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490

---

[t]he Board of County Commissioners shall then approve, approve with condi-tions, or deny the conditional use permit based on consideration of the staff report, the Planning Commission's recommendation and findings, the evidence from the public hearings, and the conditional use permits compliance with the criteria for approval.

*Id.* § 2-2-08-04; *see also id.* § 4-15 (noting that billboards are permitted with an approved conditional use permit).

U.S. 386, 394 (1989)).  Plaintiffs' liberty interest argument is duplicative of, and therefore covered by, their First Amendment claim, and for that reason cannot state a separate due process violation.  *See id.*; *see also Davis v. Olin*, 886 F. Supp. 804, 812 (D. Kan. 1995) (dismissing due process claim that "paralle[d]" First Amendment claim).

Even conceding a property interest, Defendants urge that their actions were not arbitrary and capricious.  "Arbitrary and capricious" means more than "simply erroneous." *Norton*, 103 F.3d at 932.  Rather, a substantive due process claim "can survive only if the alleged purpose behind the state action has no conceivable rational relationship to the exercise of the state's traditional police power through zoning." *Id.* (quoting *Sylvia Dev't Corp. v. Calvert County*, 48 F.3d 810, 827-28 (4th Cir. 1995)). If Defendants "articulate a rational reason for their decision which is related to a legitimate government interest, [the Court] will not look behind it for evidence that the reason was pretext." *Id.* at 933.  Plaintiffs do not dispute that Defendants have a legitimate interest in regulating billboards and preventing visual clutter.  (*See* Doc. # 14 at 8.)  Moreover, it is undisputed that Defendants' position throughout has been that Plaintiffs are attempting to erect billboards under the guise of the CEPA exemption. (*See, e.g.*, Doc. # 8, Ex. C (April 16, 2008 letter from Adams County stating that Plaintiffs "have been attempting to erect a billboard" since 2003 and that Plaintiffs sought to have the county "designate your commercial billboard as a government sign"); Doc. # 14 at 3 (Plaintiffs state that Adams County "continues to insist" that Plaintiffs' proposed CEPA signs will be commercial billboards).)  Under these circumstances,

Defendants' denials of Plaintiffs' sign requests have a "conceivable rational relationship" to the County's interests in zoning and preventing visual clutter. Whether those decisions were wrong, they do not meet the stringent test for arbitrary and capricious action.

      B.    <u>First Amendment/Equal Protection</u>

Plaintiffs' claims for violation of their First Amendment and equal protection rights are grounded in the same theory: that the distinction between government and private speakers runs afoul of the constitution. (Doc. # 1 at 6-7, 8.) Indeed, Plaintiffs concede that this case involves the "First Amendment-Equal Protection intersection." (Doc. # 34 at 4 (citing *Congregation Lubavitch v. City of Cincinnati*, 997 F.2d 1160 (6th Cir. 1993)).) Thus, the Court will consider these claims together.

Before turning to the merits, the Court must determine what, precisely, is being challenged in this case. Defendants argue that this is a simple dispute over commercial billboards and proceed to analyze the First Amendment issue under the "commercial speech" doctrine. (Doc. # 8 at 1, 6-9.) Plaintiffs stress that they are asserting a much broader challenge to a regulation that, in Plaintiffs' view, creates a government monopoly on all civic event speech. (Doc. # 14 at 1-3.) Because this speech "go[es] beyond the economic interests of the speaker and its audience," Plaintiffs contend it does not fit within the "commercial speech" paradigm. (*Id.* at 5.)

On the record before it, the Court agrees with Plaintiffs. Regardless of the fact that Plaintiffs initially sought permits for commercial billboards, they have stated

repeatedly, including by affidavit, that the signs they now seek to construct will only announce and promote civic events.  (*See, e.g.*, Doc. # 14, Ex. 1, ¶¶ 3, 5.)  Defendants' argument that the speech is commercial rests on the claim that Plaintiffs' will charge for space on the proposed CEPA signs and thus that the signs are "obviously constructed for commercial financial gain."  (Doc. # 21 at 4.)  But commercial speech in the First Amendment context has a particular – and limited – taxonomy: it is speech that "does 'no more than propose a commercial transaction.'" *Posadas de Puerto Rico Assoc. v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 340 (1986) (quoting *Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976)).  In other words, it is the speech itself, rather than the transaction surrounding the speech, that must be commercial.  *See, e.g.*, *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 67 (1983) ("[T]he fact that [a company] has an economic motivation for mailing . . . pamphlets does not by itself render the pamphlets commercial speech."); *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 505 n.11 (1981) (plurality opinion) (cautioning against "confus[ing] the category of 'commercial speech' with the category of individuals who have a 'commercial interest' in protected speech"; "Our cases long have protected speech even though it is in the form of a paid advertisement . . . .  If commercial speech is to be distinguished, it must be distinguished by its content.") (alterations, citations, and internal quotations omitted).  Indeed, "[t]o hold otherwise would convert virtually all books, newspapers, and magazines into commercial speech, and call into question the traditional protections afforded these types of publications." *U.S. Olympic Comm. v.*

*Am. Media, Inc.*, 156 F. Supp. 2d 1200, 1208 (D. Colo. 2001).  Regardless of the fact

that Plaintiffs will sell space for speech, the speech itself is not commercial.

Plaintiffs, on the other hand, contend that the CEPA exemption is both content-

and speaker-based and therefore subject to the strictest scrutiny.  (Doc. # 14 at 5, 15.)

The Court agrees, in part.  The exemption certainly discriminates based on the speaker:

governments may take advantage of the exemption while private citizens may not.

Defendants argue that the statute does not discriminate in favor of the government or

create a government monopoly on civic event speech because other entities can still

post civic event signs, they simply have to go through the permitting process to do so.

(Doc. # 21 at 3.)  But the permitting process and accompanying regulations impose

burdens on speakers, including charging a permit fee and restricting the size and

number of permissible signs.  Standards and Regulations §§ 4-14-06 to 4-14-14.  That

speech is not wholly banned does not remove a regulation from scrutiny.  *See, e.g.,*

*United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803, 812 (2000)

("The distinction between laws burdening and laws banning speech is but a matter of

degree."); *Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1075 n.5 (10th Cir.

2001) (regulations that "burden speech, even if they fall short of being a 'virtual total

ban,'" still subject to same First Amendment analysis).  The Standards and Regulations

plainly place heavier burdens on private speakers (who must obtain a permit) than on

governments (who need not do so).

It is not, however, correct to say that the CEPA exemption discriminates on the basis of the content of the speech.  The rule is not that no one may post an unpermitted sign unless it is about civic events.  That would presumably be a content-based restriction.  Rather, the rule is that no one may post an unpermitted sign unless the poster is the government.  It is the identity of the speaker, not the subject of the speech, that brings the exemption into play.[4]  Thus, the real issue in this case is whether the government can treat itself differently from private speakers and exempt itself from otherwise applicable regulations.  This is more appropriately viewed as an equal protection issue.  *See, e.g.*, *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 94-95 (1972) ("Because [the government] treats some picketing differently from others, we analyze this ordinance in terms of the Equal Protection Clause of the Fourteenth Amendment."); *Congregation Lubavitch v. City of Cincinnati*, 997 F.2d 1160, 1165 (6th Cir. 1993) ("On several occasions when local or state laws have been attacked on both free speech and equal protection grounds the Supreme Court has based its decision on the Equal Protection Clause.").

Before turning to the equal protection analysis, Plaintiffs raise another potential First Amendment issue; they contend that, because private parties must obtain a permit before posting signs concerning civic events, the CEPA exemption constitutes an unconstitutional prior restraint on their speech.  (Doc. # 1, ¶ 30; Doc. # 29 at 7-8.)

---

[4]   At oral argument on the motions for summary judgment, Defendants' counsel confirmed that the County never requested or reviewed the text – the content – of Plaintiffs' proposed CEPA signs.

However, as the Tenth Circuit has explained, "'[g]overnmental action constitutes a prior restraint when it is directed to suppressing speech **because of its content** before the speech is communicated.'" *O'Connor v. City & County of Denver*, 894 F.2d 1210, 1220 (10th Cir. 1990) (quoting *Berg v. Health & Hosp. Corp.*, 865 F.2d 797, 801 (7th Cir. 1989)) (emphasis added). As noted above, the CEPA exemption does not regulate speech based on its content. Therefore, the prior restraint analysis is inapposite. *See O'Connor*, 894 F.2d at 1220-21.

Although neither content-based nor a prior restraint, the CEPA exemption does regulate speech based on the identity of the speaker. Classifications affecting fundamental rights, such as speech, are constitutionally suspect. *See, e.g., Clark v. Jeter,* 486 U.S. 456, 461 (1988) (under the Equal Protection Clause, "classifications affecting fundamental rights . . . are given the most exacting scrutiny"). But as Defendants correctly note, the threshold question in any equal protection analysis is whether Plaintiffs are "similarly situated" to Defendants. (Doc. # 8 at 12.)

> The Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike. But so too, the Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same. . . . In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them.

*Campbell v. Buckley*, 203 F.3d 739, 747 (10th Cir. 2000) (internal quotations and citations omitted).

There is no "magic formula for determining whether someone is similarly situated"; rather, the inquiry is a "common-sense" one that focuses on the factors

relevant to the particular claim of unequal treatment.  *Chavez v. Illinois State Police*, 251

F.3d 612, 636 (7th Cir. 2001).  As one court has explained,

> [t]he test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.  Much as in the lawyer's art of distinguishing cases, the "relevant aspects" are those factual elements which determine whether reasoned analogy supports, or demands, a like result.  Exact correlation is neither likely nor necessary, but the cases must be fair congeners.  In other words, apples should be compared to apples.

*Barrington Cove Ltd. Partnership v. Rhode Island Housing and Mortg. Finance Corp.*,

246 F.3d 1, 8 (1st Cir. 2001) (quoting *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d

13, 19 (1st Cir. 1989), *overruled on other grounds*, *Educadores Puertorriquenos en*

*Accion v. Hernandez*, 367 F.3d 61 (1st Cir. 2004)).  The critical question, then, is

whether, based on a common-sense evaluation, governments and private citizens

are "roughly equivalent" with respect to the posting of signs announcing civic events.

Neither party cites, nor has this Court found, any case addressing this issue in

the specific context of civic event signs.  Other courts have, however, considered the

broader question of whether the government can exempt itself from generally applicable

regulations, including sign regulations.  Unfortunately, there is no clear consensus on

the answer.[5]  For example, in *Congregation Lubatich v. City of Cincinnati*, 997 F.2d

1160 (6th Cir. 1993), a case relied on by Plaintiffs, the Sixth Circuit struck down a city

---

[5]   The Court recognizes that these cases approach this issue from various analytic perspectives.  For example, some deal with the issue as an equal protection question, while others analyze it under a particular First Amendment doctrine.  However, the Court finds these cases relevant, particularly because the First Amendment and equal protection issues in this case are substantially intertwined.

ordinance that banned overnight displays on public property but exempted from the ban displays sponsored by governmental entities.  The court held that "[t]he ordinance on its face makes a distinction between privately-sponsored and publicly-sponsored activities in a public forum," and ultimately concluded that it violated the Equal Protection Clause. *Id.* at 1165, 1167-68.  Another court similarly found unconstitutional a sign ordinance that exempted all government signs from its strictures:

> While signs erected by the Towns likely convey helpful information regarding the location of services and the identity of Town officials, the Towns may not allow their governments to run completely afoul of the Ordinances.  These governmental exemptions result, at least, in the favoring of certain types of commercial speech over others.  They can also result in the favoring of certain types of non-commercial speech over others.
>
> For example, if a commercial establishment in either [town] wished to erect a sign conveying a non-commercial message on its premises, it could certainly do so. . . . Those signs, however, would be required to comply with all other requirements of the Ordinances, including size and lighting limitations.  A sign erected by either [of the town] governments, however, would have no such restrictions regarding size and illumination. By freeing governmental signs from the reach of the Ordinances, the Towns have created an impermissible distinction that favors the Towns' speech over that of other speakers.  For this reason, the broad exemption of governmental signs is unconstitutional.

*Nichols Media Group, LLC v. Town of Babylon*, 365 F. Supp. 2d 295, 316 (E.D.N.Y. 2005).  Several other courts have reached similar conclusions.[6]

---

[6]   *A.N.S.W.E.R. Coalition v. Kempthorne*, 537 F. Supp. 2d 183, 196-97 (D.D.C. 2008) (noting that the National Park Service must "subject itself to the same permitting regulations as other applications for permits"; otherwise "Government-sponsored displays are always given preference over other displays which do not meet with the approval of Government officials. Such discrimination cannot be analogized to evenhanded enforcement of the rules of the road. It constitutes instead the kind of blatant government censorship which the framers of the First Amendment intended to outlaw forever" (quoting *Women for Peace v. Morton*, 472 F.2d 1273,

In other cases, however, courts have expressly approved of these sort of governmental exemptions.  In *Lavey v. City of Two Rivers*, 171 F.3d 1110 (7th Cir. 1999), the Seventh Circuit concluded, with little discussion, that a local ordinance's exemption for government signs was "fully justified" as a "common-sense exception[ ]" to the regulations.  *Id.* at 1116.  Similarly, in *G.K. Ltd. Travel v. City of Oswego*, 436 F.3d 1064 (9th Cir. 2006), the court found that a sign code's exemption of public agencies from the ordinance's permitting scheme was permissible.  *Id.* at 1076-77.[7] The court found that the exemption merely "reflect[ed] the City's preference for not subjecting certain entities [such as public agencies] to the requirements of the permitting and fee scheme," and therefore was "purely speaker-based" and did not

---

1293 (D.C. Cir. 1972) (Wright, J., concurring))); *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1265-69 (11th Cir. 2005) (finding sign code's exemptions for public utility signs or signs erected by government bodies unconstitutional; "The sign code's exemptions that pick and choose the **speakers** entitled to preferential treatment are no less content based than those that select among subjects of messages.") (emphasis in original); *N. Olmsted Chamber of Commerce v. City of N. Olmsted*, 86 F. Supp. 2d 755, 765, 778-79 (N.D. Ohio 2000) (finding that portion of sign ordinance that permitted bulletin board announcement signs only on the property of "a public or semi-public institution" violated Equal Protection Clause "because [it] distinguish[ed] between and classif[ied] speakers in a manner than affects fundamental rights protected by the First Amendment"); *cf. R.J. Reynolds Tobacco Co. v. Shewry*, 423 F.3d 906, 923 (9th Cir. 2005) ("[T]here may be instances in which the government speaks in such a way as to make private speech difficult or impossible, or to interfere with some other constitutional right, which could raise First Amendment concerns.") (citing *Warner Cable Commc'ns, Inc. v. City of Niceville*, 911 F.2d 634, 638 (11th Cir.1990)).

    [7]  Although the Ninth Circuit had "previously questioned the constitutionality of a wholesale exemption for government speech," *G.K. Ltd. Travel*, 436 F.3d at 1077 n.11, the Court noted that this was not such an exemption, as the public entities still had to comply with the substantive provisions of the code (*e.g.*, the number and characteristics of their signs).  *Id.* at 1076-77.

unconstitutionally favor any speech based on its content or the speakers' messages. *Id.* at 1077.[8]

At least where the government is behaving as a quintessentially governmental actor, the Court agrees with those cases finding that it may exempt itself from signage regulations without offending the constitution.  A citizen and the government are not in an equivalent position with respect to announcing road closures, election logistics, county meetings and the like.  *Cf. Campbell*, 203 F.3d at 747-48 (holding that the Colorado legislature and Colorado's citizens were not similarly situated with respect to the legislative process, and therefore treating citizens proposing legislation through the initiative process differently from members of the legislature passing bills through the traditional legislative process did not raise equal protection concerns).  Thus, in the circumstance of government *qua* government, it cannot be said that the government and private citizens are "similarly situated."

---

[8] *Accord Sokolove v. City of Rehoboth Beach*, 2005 WL 1800007, *4-5 (D. Del. July 28, 2005) (ordinance that prohibited private signs on public property while implicitly permitting public signs not a content-based restriction; "It seems much more logical to view that [distinction] as an exception allowing the government to erect signs which are part of the ordinary exercise of the government's police power, such as traffic safety and directional signs"); *Lamar Adver. Co. v. City of Douglasville*, 254 F. Supp. 2d 1321, 1332 (N.D. Ga. 2003) (holding that sign ordinance that exempted, among other things, "government signs within the public right-of-way" was not an attempt to censor speech and thus did not constitute an impermissible content-based regulation); *cf. John Donnelly & Sons v. Campbell*, 639 F.2d 6, 8-9 (1st Cir. 1980) (finding comprehensive billboard regulation unconstitutional, but rejecting argument that  billboard ban's exemption for certain signs, including "signs of governmental and quasi-governmental bodies, and for traffic and bus signs and the like," was impermissibly content-based; court found that exemption was "justified by sheer public necessity" and therefore reflected "an appropriate governmental interest").

That conclusion compels the Court to reject Plaintiffs' First Amendment/equal protection claim.  Defendants' interpretation limits the CEPA exemption to "events sponsored by governments, not commercial advertising."  (Doc. # 8, Ex. D.)  This is the sort of narrow interpretation that passes equal protection muster.  Private parties seeking to erect signs that would be rented for profit and that would generate, by Plaintiffs' expert's estimate, several million dollars per year, (Doc. # 77, Ex. B), are not similarly situated to governmental entities promoting government-sponsored events.

Although not in the context of the equal protection argument, Plaintiffs do point to the County-owned sign near the Adams County Regional Park, which Defendants have cited as an example of a CEPA sign, to suggest that Defendants generate a profit from their CEPA signs as well.  (Doc. # 14 at 10-11.)  Plaintiffs also note that this sign advertises such private events such as Jack Russell Fun Day, the Christmas Craft Fair, Teresa Dudden Barrel Racing, and various auctions and other events.  (Doc. # 14 at 6, *see also id.*, Ex. 15.)  In response, however, Adams County submitted an affidavit from its director of finance noting that, while private entities can rent the Regional Park facilities for a fee, which includes advertisement on the County-owned sign "for events open to the public," Adams County makes no profit from either the sign or the rental of its facilities.  (Doc. # 21, Ex. F.)  Rather, "[r]ental fees are used to offset some of the costs of operating the facilities." (*Id.*)  Further, at oral argument on the motions for summary judgment, counsel for Defendants noted that the Regional Park facilities, including the sign, are available to all groups whose events are open to the public.

Thus, there is no content-based discrimination with respect to who can use the Regional Park sign.  A government charging a modest rental fee to use facilities that are open to all comers is simply not a "fair congener" to a private corporation generating millions of dollars in profits.

Importantly, the Court's opinion does not mean that a government could, in any circumstance, exempt itself from sign or other speech-related regulations without running afoul of the First Amendment or Equal Protection Clause.  Rather, the Court finds only that, where the government draws a limited exemption that is related to typical government activities, it does not engage in the sort of invidious discrimination that gives rise to a constitutional claim.

      C.    Qualified Immunity

Finally, Defendants argue that, whatever the validity of the claims against the County, Mr. Coney is entitled to qualified immunity.  (Doc. # 8 at 14-15.)  Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The doctrine is difficult to overcome.  Qualified immunity "'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'"  *Novitsky v. City of Aurora*, 491 F.3d 1244, 1255 (10th Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "'When a defendant raises the qualified immunity defense on summary judgment, the

burden shifts to the plaintiff to meet a strict two-part test.'" *Cassady v. Goering,* 567

F.3d 628, 634 (10th Cir. 2009) (quoting *Nelson v. McMullen*, 207 F.3d 1202, 1206

(10th Cir. 2000)).  The plaintiff must show both "(1) that the defendant violated a

constitutional or statutory right, and (2) that this right was clearly established at the time

of the defendant's conduct." *Cassady*, 567 F.3d at 634.  Until recently, this process was

required to occur sequentially: a court was first to determine whether a right was

violated, and only if it was could the court proceed to decide whether that right was

clearly established.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  However, the Supreme

Court recently revisited the *Saucier* procedure and held that it was not mandatory,

meaning that courts "should be permitted to exercise their sound discretion in deciding

which of the two prongs of the qualified immunity analysis should be addressed first."

*Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 818 (2009).

        The Court has already held that Plaintiffs have not stated a violation of their First

Amendment, equal protection, or due process rights.  However, even assuming a

constitutional violation, Plaintiffs have not shown that the right at issue was clearly

established.  Plaintiffs contend that "[i]t is . . . clearly established that governmental

entities cannot authorize their own speech while at the same time denying this speech

to others," and that "[r]easonable government officials, including Mr. Coney, would have

known that governmental entities are not entitled to monopolize speech regarding civic

events." (Doc. # 14 at 17.)  But while many of the Supreme Court cases cited by

Plaintiffs recite relevant constitutional principles, such as that governmental

-29-

differentiation based on content and speaker raises concerns, few deal with the specific issue presented in this case: whether the government can treat itself differently from private speakers and exempt itself from otherwise applicable regulations.  As the above-cited cases demonstrate, *see infra* Sec. II.B, the answer to that question is far from "clearly established."  *See also* Brian W. Blaesser & Alan C. Weinstein, *Federal Land Use Law & Litig.* § 5:8 (2009) (noting that the Supreme Court's jurisprudence on sign ordinances and exemptions, including government sign exemptions, have caused lower courts to "puzzle" over the appropriate standards). For these reasons, Mr. Coney deserves qualified immunity.

## CONCLUSION

For the reasons stated above, it is ORDERED that Defendants' Motion for Summary Judgment and Motion to Dismiss (Doc. # 8) is granted in full and Plaintiffs' Motion for Summary Judgment (Doc. # 29) is denied.  It is further

ORDERED that the trial in this matter, scheduled to commence on July 20, 2009, at 1:30 p.m., is VACATED and all other pending motions, including, Plaintiffs' Motion for Leave to File Reply in Support of Motion to Compel Discovery Regarding Qualified Immunity Defense (Doc. # 59), Plaintiffs' First Motion in Limine (Doc. # 76), Defendants' Motion to Strike Plaintiffs' Expert Mark Giordano (Doc. # 77), Plaintiffs' Second Motion

in Limine (Doc. # 78), and Plaintiffs' Third Motion in Limine (Doc. # 79) are DENIED as

MOOT.

DATED:  July __16__, 2009

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge